26-MJ-1361

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT
BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, Joseph DePanfilis, being first duly sworn, hereby depose and say:

**INTRODUCTION**

1.      I am a Special Agent with the Drug Enforcement Administration (DEA),
Philadelphia Field Division (PFD) currently assigned to the DEA PFD Group 51 Financial
Investigations Team (Group 51/FIT), which is composed of Special Agents and Task Force
Officers investigating narcotics trafficking and money laundering. I was previously employed as
a Special Agent with the Naval Criminal Investigative Service (NCIS) beginning in June 2017,
and I have been employed as a DEA Special Agent since December 2022. I have participated in
numerous investigations concerning money laundering and the distribution of unlawful
controlled substances.

2.      I have received specialized training from the Federal Law Enforcement Training
Center (FLETC) located in Glynco, Georgia, as well as the DEA Academy located in Quantico,
Virginia, regarding the investigation and identification of narcotics traffickers, as well as the
related methods of laundering narcotic proceeds. I have conducted physical surveillance,
debriefed confidential sources, participated in the execution of search and arrest warrants, and
prepared numerous affidavits to intercept communications between traffickers. As a part of my
official duties, I investigate criminal violations of the federal narcotics laws including, but not
limited to, Title 21, United States Code, Sections 841(a)(1), 843(b), 846, 848, 853, and 860. I
have received special training in the enforcement of laws concerning controlled substances and
narcotics trafficking organizations.

1

3.    I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

4.    The facts in this affidavit come from my personal observations, my training and experience, information obtained from other law enforcement officers and witnesses, the review of recordings and documents and other evidence developed during the investigation. This affidavit is intended to show merely that there is sufficient probable cause for the criminal complaint and arrest warrant and does not set forth all my knowledge about this matter.

5.    I submit this affidavit seeking the issuance of an arrest warrant for, and a criminal complaint charging, Zaire RICHARDS-DAVILA a/k/a "Zaire Davila" a/k/a "Zeke" with one count of possession with intent to distribute 5 kilograms or more, that is approximately 20 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of  21 U.S.C. §§ 841(a)(1), (b)(1)(A).

### FACTS ESTABLISHING PROBABLE CAUSE

6.    The United States, including the Drug Enforcement Administration ("DEA"), has been conducting a criminal investigation of Zaire RICHARDS-DAVILA (D.O.B. 12/26/1991) ("RICHARDS-DAVILA") for violations of 21 U.S.C. § 841(a)(1) and related offenses.

7.    On or about June 30, 2026, members of the DEA met with DEA Confidential Source #1 ("CS #1").[1] Investigators searched CS #1 and CS #1's vehicle for money or contraband and none was found ahead of a planned meeting with RICHARDS-DAVILA regarding the sale of approximately 20 kilograms of cocaine. Investigators also supplied CS #1

---

[1] Since 2023, CS #1 has been providing information that has been corroborated by other independent sources. The information provided by CS #1 has proven to be reliable and credible. CS #1 has provided information regarding other crimes, illegal drug trafficking, and money laundering. This information has led to the seizure of drugs and arrests. CS #1 has a prior criminal history with an arrest and conviction for providing fraudulent vehicle insurance in 2005 in New Jersey. CS #1 is providing information for financial compensation and immigration assistance.

2

with audio/video recording equipment, and placed CS #1's vehicle under physical surveillance as well.

8.      CS #1 traveled to the predetermined meet location in Philadelphia, Pennsylvania and parked. While CS #1 waited a phone number, known to your Affiant, contacted CS #1 asking for a description of CS #1's location in the parking lot. A short time later a heavy-set black male ultimately got into the passenger seat of CS #1's car. Your Affiant previously reviewed a known photograph of RICHARDS-DAVILA and confirmed he was the same male who got into CS #1's vehicle. Available subscriber records returned from T-Mobile USA for the phone number in contact with CS #1 listed the customer as "Zaire Davila, [Redacted Address], Camden, NJ 08104."

9.      In summary, RICHARDS-DAVILA and CS #1 discussed delivery timelines, money amounts, and quantities consistent with drug trafficking and agreed to the purchase of 20 kilograms of cocaine in the next one to two weeks. Beginning on or about the week of July 6, 2026, CS #1 communicated with the same phone number that contacted CS #1 on June 30, 2026 shortly before RICHARDS-DAVILA arrived to CS #1's car. CS #1 provided updates to RICHARDS-DAVILA on the location of a fictitious delivery vehicle as it made its way toward Philadelphia, Pennsylvania and CS #1 ultimately reported that the vehicle would arrive to Philadelphia on either July 15, 2026 or July 16, 2026.

10.     On or about July 16, 2026, investigators utilized a law enforcement vehicle that a DEA Special Agent parked at the predetermined meet location in Philadelphia, Pennsylvania prior to the designated meet time. DEA Confidential Source #2 ("CS #2") occupied the vehicle at the time of the planned meeting with RICHARDS-DAVILA to appear as if he/she was the driver of the delivery vehicle.[2] Both CS #2 and the law enforcement vehicle were searched in advance

---

[2] CS #2 is a United States citizen with a state and federal criminal history dating to approximately 2021. CS #2 is currently on federal supervised release and has pending state drug

for money or contraband and none was found. Members of the DEA previously obtained 20 kilograms of cocaine, a Schedule II controlled substance, that were securely stored in the DEA Philadelphia Division evidence locker and packaged them in a suitcase inside the same law enforcement vehicle. Both CS #2 and the law enforcement vehicle were equipped with audio/video recording equipment and also placed under physical surveillance.

11.     CS #1 sent a photograph of the suitcase containing the packaged cocaine kilograms to the same phone number from the June 30, 2026 meeting and called the number with an anticipated arrival time for the delivery vehicle. During the surveillance, investigators observed RICHARDS-DAVILA arrive and enter the law enforcement vehicle. In summary, RICHARDS-DAVILA explained to CS #2 that he did not have the money for the cocaine kilograms on hand and was under the impression that he would be able to accept them on consignment and pay later. RICHARDS-DAVILA explained that he had customers standing by and could pay quickly. CS #2 and RICHARDS-DAVILA ultimately spoke with CS #1 on the phone and the three agreed that RICHARDS-DAVILA would be permitted to take the suitcase containing the cocaine kilograms with payment due shortly thereafter. RICHARDS-DAVILA then got out of the law enforcement vehicle holding the suitcase containing the 20 kilograms of cocaine. Law enforcement took him into custody and recovered the suitcase.

12.     Based on my knowledge, training and experience, together with other investigators participating in this investigation, the quantity of recovered controlled substances, the way in which they were packaged/concealed, RICHARDS-DAVILA's communications with CS #1 and CS #2, and the lack of any form of user-type paraphernalia recovered from

---

trafficking charges in two different jurisdictions. The offense dates for those charges predate the imposition of CS #2's term of supervised release and investigators do not believe the pending charges would result in a violation of his terms of supervision. CS #2 is motivated to assist the DEA in exchange for the possibility of reduced punishment for those pending criminal charges. To date, the information previously supplied by CS #2 has proven to be truthful, reliable and lead to the recovery of bulk quantities of controlled substances.

RICHARDS-DAVILA's person indicate that the amounts of recovered cocaine were possessed for distribution and not personal use.

13.    Because of the sensitive nature of this ongoing investigation, an Order is sought sealing the Criminal Complaint, Affidavit, and Arrest Warrant and granting a limited unsealing solely for the purposes of RICHARDS-DAVILA's initial appearance, probable cause and detention hearings.

## CONCLUSION

14.    WHEREFORE, based upon my training and experience and my knowledge of this investigation, I have probable cause to believe, and do so believe, that Zaire RICHARDS-DAVILA possessed with the intent to distribute 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A).

Respectfully submitted,

/s/ *Joseph DePanfilis*
Joseph DePanfilis
Special Agent
Drug Enforcement Administration

Sworn and attested to by the applicant in accordance
with the requirements of Fed. R. Crim. P. 4.1
by telephone on this 16th day of July 2026:

/s/ *Jose R. Arteaga, USMJ*
HONORABLE JOSÉ R. ARTEAGA
United States Magistrate Judge

5